*SMH 1:27.20*

Hann x4813

**AFFIDAVIT OF CHRISTOPHER FALLER**

**TASK FORCE OFFICER, DRUG ENFORCEMENT ADMINISTRATION**

I, Christopher Faller, being first duly sworn, hereby depose and state as follows:

### Background and Experience

1.     Your affiant, Christopher Faller, Task Force Officer of the Drug Enforcement Administration (DEA), United States Department of Justice, is an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. 2510 (7); that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. 2516.

2.     Your Affiant, Christopher Faller, has been a sworn officer of the Baltimore Police Department since January 1999 and is currently assigned to the Violent Crime Impact Division. Your Affiant attended, and successfully graduated from the Baltimore City Police Department in July 1999, and Westfield State College in May of 1994, where a Bachelor Of Science Degree was achieved. Your affiant has served as a Police Officer/Agent/Detective in the Western District of Baltimore City, in patrol, as well as the district's operations unit. Following this assignment, your affiant served in the Mobile Enforcement Team (MET) and The Firearms Apprehension Strike Team (FAST). After this tenure, your affiant spent two years in an undercover capacity, in the City's Organized Crime Division, then to a position in the City Wide Gun Squad, under the same command, and finally, still under the parent command of The Organized Crime Division, the Response Unit, which was responsible for trafficking violent narcotics traffickers. Immediately following this, your affiant was assigned to the Violent Crime Impact Division. Then for approximately nine years, your affiant was assigned to the ATF (Bureau of Alcohol Tobacco and Firearms) as a Task Force Officer. Presently, your affiant is a Task Force Officer with The DEA (Drug Enforcement Administration).  Your affiant has received approximately 380 hours of

specialized training in Narcotics enforcement. Training has been received from The Baltimore City Police Department, The Maryland State Police, The Drug Enforcement Administration, The Bureau of Alcohol Tobacco and Firearms (ATF) and The New York City Police Department. Your affiant also receives on a daily basis, training from more experienced police officers, and supervisors, through on hand situations, as well as roll call training. As a result of this training and experiences, your affiant has become familiar with the appearances, prices and street terminologies of Controlled Dangerous Substances. Your affiant has become familiar with probable cause, search and seizure statutory laws, and constitutional rights of citizens as these factors relate to narcotics enforcement. Your affiant to this date, has made numerous arrests for narcotics, and has personally seized such substances as cocaine, heroin, marijuana, and illegally obtained prescription medication. Your affiant has also been affiant for numerous search warrants, where these substances were recovered, and proceeds from same. As an undercover detective, your affiant has made hundreds of purchases of controlled dangerous substances, and regulated firearms. Finally, your affiant has personally been qualified as an expert witness related to controlled dangerous substances, in juvenile, district, and circuit court of Baltimore City, State of Maryland.

3.     The facts set forth in this affidavit are based on your affiant's own personal knowledge, knowledge obtained from oral and written reports by other law enforcement officers, and information gained through your affiant's training and experience. Since this affidavit is for a limited purpose, your affiant has not included every fact known about this investigation. Your affiant sets forth only facts necessary to establish a foundation for the requested criminal complaint. Dates and times are approximate.

**Probable Cause**

4.      On June 19, 2019 at 10:48 p.m. members of the Baltimore City Police Department were on patrol in the 2400 block of Tolley Street near to the intersection with Harmen Avenue, in Baltimore City, the state of Maryland. This area is known for high levels of narcotics activity. At this time they observed a 2011 Honda vehicle parked at that corner with the engine running and an individual later identified as Eric Crawford leaning into the driver's window.   The car was parked in front of a fire hydrant.   The officers pulled their police vehicle slightly in front of the Honda and activated their lights to perform a stop based on the parking violation.   The officers noted that the car had a driver, a front passenger, and a rear passenger inside.

5.      The driver of the Honda, later identified as David Temple, put the car into reverse and started to back up from the officer's car in front.   A second police vehicle however had pulled behind the Honda, and upon noticing this, Temple stopped the car. The officers also could see that a front passenger in the Honda was reaching into a bag he was wearing around his torso.

6.      Based on the movements of the occupants of the car, the officers then approached the vehicle and had the front passenger exit the car.   In the seat where the front passenger was situated, the officers saw in plain view a gelcap containing a powdery substance, suspected to be heroin or fentanyl.   Upon searching the passenger's bag they found a second gelcap of suspected heroin/fentanyl.   The driver, identified as David Temple, was searched and a plastic bag containing 25 gelcaps of suspected heroin/fentanyl was recovered from his front waistband, as well as approximately $8,368.00 from his person.   Lab analysis later that found the gelcaps recovered from Temple tested positive for both fentanyl and a substance called 4-ANPP.

7.      As Eric Crawford walked away, officers observed him tap the right side of his pants, which is commonly indicative and referred to as a characteristic of an armed person as he

3

walked away from the vehicle, subsequently, he was also stopped.  After a pat down by officers, recovered from Crawford was a loaded firearm, 21 gelcaps of a fentanyl and 4-ANPP mixture, and two ziplock bags of cocaine.

8.     Both David Temple and Eric Crawford were taken into custody and charged with possession with intent to distribute narcotics.  Crawford was also charged with firearm possession related charges.[1]  Over the next several days the officers monitored jail calls made by each defendant that appeared to be related to drug trafficking or storage.

9.     On June 21, 2019 at approximately 7:02 p.m. Temple placed a call, from a correctional facility, to a woman identified as Latonya Felder, who is believed to be his girlfriend. During these calls, Temple identified himself as "David Temple", having a Maryland state ID number of 3051019.  The phone number used is 443-355-1594, and is documented to Latonya Felder. During this call, and others that followed, Temple gives instructions for Felder to locate his drug stash and who to contact to continue making drug transactions while he is incarcerated. In particular the two discuss going to a residence at 2113 Whistler Avenue, which investigators determine was Eric Crawford's residence.  Investigators later executed a search and seizure at that residence on June 23, 2019 and recovered narcotics and multiple firearms.  In the days that followed, Felder reported to Temple during jail calls that the house appeared to have been raided and that Crawford's girlfriend was arrested.

10.     Felder and Temple continued to discuss steps to further facilitate Temple's drug trafficking activity while he is incarcerated.  For example, in a call on June 28, 2019 at 8:57 p.m., Temple gives instructions to Felder on how break down suspected narcotics into packs of 25, and that one of his associates will give her $100 for each 25 she gives to the associate.  Felder instead

---

[1] Investigation by the DEA into the arrest and firearm recovery from Eric Crawford is ongoing.

reports that she had given all of the suspected narcotics to a friend of her own for "3 up front" and Temple becomes angry. He asks her what the weight of the items were on a scale, and she answers it was "42.7." Temple goes on to tell her "That was a whole and a half one! $1,800 at least! At least! Even if it was one of my people at least $1,500 is what they going for right now." Using coded terms recognized by the investigators, the two then discuss additional suspected CDS Temple had before being arrested, and he gives Felder instructions on who to give it to, in what quantities, and exactly how much money to request. Based on their training and experience the investigators and your affiant believe that these calls indicate that Felder was continuing to conduct illegal CDS transactions while David Temple was incarcerated.

11.    Based on this series of jail calls and other investigation, on July 3, 2019 the officers executed a search and seizure warrant at Latonya Felder and David Temple's address at 104 Diener Street, Apt 304. Felder answered the door when they knocked. She was advised of her Miranda rights and they asked her if there were any narcotics in the residence. In response she said yes and handed them a book bag that was next to her on the couch.

12.    Inside the book bag the officers found: One gel cap with tan powder (analyzed and found to be fentanyl), 1 plastic bag with tan powder (fentanyl and 4-ANPP mixture – approx. 3.25 grams), 1 plastic bag with 3 gel caps with tan powder (fentanyl, cocaine, and 4-ANPP mixture), 5 gel caps with tan powder (fentanyl, cocaine, and 4-ANPP mixture), 1 plastic bag containing 1 plastic bag with 25 gel caps with tan powder (fentanyl, cocaine, and 4-ANPP mixture), 1 plastic bag with 39 gel caps with tan powder (fentanyl, cocaine, and 4-ANPP mixture), 1 plastic bag with 50 gel caps with tan powder (fentanyl and 4-ANPP mixture), 1 plastic bag with 46 gel caps with tan powder (fentanyl and 4-ANPP mixture), 1 plastic bag with 50 gel caps with tan powder (fentanyl and 4-ANPP mixture), 1 plastic bag with 50 gel caps with tan powder

(fentanyl and 4-ANPP mixture), 1 plastic bag with 50 gel caps with tan powder (fentanyl and 4-ANPP mixture), 1 plastic bag with 50 gel caps with tan powder (fentanyl and 4-ANPP mixture), and 1 plastic bag with 43 gel caps with powder (fentanyl and 4-ANPP mixture).

13.     The officers also recovered 1 gelcap of fentanyl and 1 plastic bag with a rock substance found to be cocaine (approximately 1.16 grams) in the back bedroom.  In the middle bedroom they found 1 digital scale with residue and paperwork addressed to David Temple.  In the kitchen they found 1 Taurus G2C 9mm handgun (serial # TLX69540) loaded with 12 live 9mm cartridges, 1 plastic bag with white power cocaine (approximately 9.74 grams), a digital scale, and mail for Latonya Felder.  They also recovered $512 in the residence.

14.     Based on the training, knowledge and experience of the arresting officers and of your affiant, the quantity, packaging, and circumstances surrounding the recovered CDS from both the June 19, 2019 arrest of David Temple and from the search of 104 Diener Place indicate that the CDS was possessed with an intent to distribute.

## Conclusion

15.     Therefore, based on the foregoing, it is your affiant's belief that there is there is probable cause to believe that from in on or about June 19, 2019 to in or about July 3, 2019,  David Temple and Latonya Felder did conspire to distribute and possess with intent to distribute a quantity of a mixture or substance containing a detectible amount of fentanyl, and a quantity of a mixture or substance containing a detectible amount of cocaine, in violation of Title 21, United States Code, Section 846.

I, Christopher Faller, affirm under penalties of perjury that the facts and circumstances recounted in the foregoing affidavit are true and accurate to the best of my knowledge.

Christopher Faller
Taskforce Officer
Drug Enforcement Administration


Subscribed and sworn before me on January 27, 2020.

Deborah L. Boardman
United States Magistrate Judge